UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CR-27-TS |
| | ) | |
| KEITH COOPER | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's motion to suppress, filed on September 6, 2005. The Defendant seeks to suppress evidence found in a search of his car, arguing he did not voluntarily consent to the search. An evidentiary hearing was held on December 15, 2005, at which the government called Officer James Gasvoda, the officer to whom the Defendant gave consent. The Defendant filed its post-hearing brief on February 13, 2006. The government responded on March 13 and the Defendant replied on March 27.

**A.      Factual Findings**

On February 11, 2005, around 9:00 p.m., law enforcement officers arrived at an apartment located at 7323 Thoroughbred Drive, Apt. 1-D, in Fort Wayne, in response to a 911 call. The officers entered the apartment and saw marijuana in plain view. The officers detained the Defendant and the Defendant's girlfriend, who was also present. Gasvoda advised the Defendant of his *Miranda* rights and explained these rights to ensure the Defendant understood. The Defendant said he was willing to talk, and said there were no firearms in the apartment. When asked about the marijuana, he declined to comment further. After that, Gasvoda asked for consent to search the apartment, telling him he had the right to refuse, and the Defendant said no. Gasvoda did not initiate any further conversation with the Defendant until around midnight. The officers had requested a

search warrant of the apartment, but the requested warrant did not include the Defendant's car parked outside. While waiting for the search warrant, the Defendant was not handcuffed and was allowed to sit on the couch and watch TV with two officers and his girlfriend. The other officers in the apartment remained in the hallway.

Around midnight, the search warrant was obtained and the officers conducted a search. About the same time, Gasvoda again read and explained to the Defendant his *Miranda* rights, using a waiver form and taking into account the Defendant's educational level. It appeared to Gasvoda that the Defendant clearly understood that he did not have to talk to Gasvoda, he could stop at any time, and he could request an attorney. The Defendant signed the waiver form.

After the Defendant signed the *Miranda* waiver, Gasvoda sought consent to search the outside garage and two cars, a Porsche and a Buick. Three consent forms were used. On the first, Gasvoda wrote the Defendant's full name, sex, race, age, date of birth, social security number, and level of education. Gasvoda told the Defendant the form was to obtain his consent to search the Defendant's property. Gasvoda read the form, including the specific property to be searched, its location, and the date and time to the Defendant. He also read the Defendant his rights as stated on the form, and explained those rights. Under the section entitled "YOUR RIGHTS," the form stated:

1. YOU HAVE THE RIGHT TO REQUIRE THAT A SEARCH WARRANT BE OBTAINED PRIOR TO ANY SEARCH OF YOUR PROPERTY.
2. YOU HAVE THE RIGHT TO REFUSE TO CONSENT TO A WARRANTLESS SEARCH OF YOUR PROPERTY.
3. YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE CONSENTING TO A WARRANTLESS SEARCH OF YOUR PROPERTY.
4. IF YOU ARE UNABLE TO EMPLOY A LAWYER, ONE WILL BE APPOINTED TO ASSIST YOU IN DECIDING IF YOU SHOULD CONSENT TO A WARRANTLESS SEARCH OF YOUR PROPERTY.

(Gov. Ex. 1, Dec. 15, 2005 Hearing.) Underneath this section, there was a place for a property owner

to sign, and the Defendant signed it. Underneath the "YOUR RIGHTS" section was a "WAIVER OF RIGHTS" section. The section stated that the Defendant "knowingly and voluntarily consents to [Gasvoda] conducting a warrantless search" of the described property. It goes on to state

> My consent to a warrantless search of my property is freely and voluntarily given and is given with the specific knowledge that I have a constitutional right to refuse to consent to a warrantless search and to discuss my decision with a lawyer prior to consenting to a warrantless search of my property.

(Gov. Ex. 1, Dec. 15, 2005 Hearing.) That section was read to the Defendant, and he signed it as well.

This procedure was repeated for two more consent forms, so that three forms were filled out, one for the garage, Porsche, and Buick. On each, Gasvoda wrote the time. The first form for the garage has a time of 0001 hours, or 12:01 a.m. The second for the Porsche has a time of 0009 hours, or 12:09 a.m., and the third for the Buick has a time of 0017, or 12:17 a.m. Gasvoda testified that he did not threaten the Defendant or make any promises to induce his signature. No officer had a gun drawn. Gasvoda believed the Defendant understood what going on and what his rights were. The Defendant stated he could not read and write English, and so Gasvoda explained everything as he would to his eight year old child. The Defendant was given an opportunity to ask questions, but he did not. Gasvoda stated that after being read the third form at 12:17, the Defendant acted "kind of wishy washy, like he didn't understand." (Dec. 15, 2005, Hearing Tr. 12, 28–29.) Gasvoda believed that he did understand, because he had completely understood the first two forms, and that this was "game play." (Dec. 15, 2005, Hearing Tr. 12, 28–29.)

After obtaining consent, the Buick, Porsche, and garage were searched. The officers did not recover anything from the Porsche or the garage, but in the Buick's trunk, they discovered a magazine for a handgun that had been discovered in the apartment.

3

The Defendant did not testify, but proffered documents from the Defendant's educational history that show a lack of progress after third grade and an I.Q. of 87.

**B.    Analysis**

The government bears the burden of proving that consent to search was freely and voluntarily given by a preponderance of the evidence. *United States v. Grap*, 403 F.3d 439, 442 (7th Cir. 2005). "Warrantless searches are presumptively unreasonable under the Fourth Amendment, but are permissible when the defendant voluntarily consents to the search." *United States v. Strache*, 202 F.3d 980, 984 (7th Cir. 2000). Whether consent is voluntary or a product of "'duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" *Id.* at 985 (quoting *Schneckloth v. Bustomonte*, 412 U.S. 218, 227 (1973)). Circumstances to be considered include "(1) the age, education and intelligence of the defendant; (2) whether [the defendant] was advised of his constitutional rights; (3) the length of detention prior to consent; (4) whether [the defendant] consented immediately or police made repeated requests for consent; (5) whether physical coercion was used;(6) whether [the defendant] was in custody." *Id.* at 985. The factors are to be carefully scrutinized in the context of "'all surrounding circumstances,'" and the "'presence or absence of a single controlling criterion'" is not determinative. *Id.* (quoting *Schneckloth*, 412 U.S. at 226).

"The purpose of suppression of evidence obtained in an unreasonable search is to deter violations by officers of the Fourth Amendment." *Grap*, 403 F.3d at 444–45. Determining whether to suppress evidence obtained in a consent search where consent is alleged to have been involuntary must take account of this purpose. In such a case, suppression depends on whether consent appeared

4

voluntary to a reasonable officer. *Id.* ("The standard of what is reasonably apparent to a reasonable inquiring officer, with its emphasis on the deterrence rationale of the exclusionary rule, is the correct approach."). Facts relating to a party's mental condition of which a reasonable officer would have no notice have little relevance. *Id.* ("Obviously, [police officers] cannot be deterred by circumstances that are unknown to them, like the psychiatric history of the person consenting to a search.").

The Defendant argues that the Defendant was not capable of giving consent because of his limited intelligence. The Defendant claims Gasvoda was put on notice that the Defendant lacked the capacity to give voluntary consent to a search because the Defendant initially refused to give consent to search the apartment, the Defendant was detained for three hours pending retrieval of the search warrant, and the Defendant stated to Gasvoda that he could not read and write English and had only gone to school until ninth grade. The Court disagrees; the Court is not convinced the Defendant is so lacking in ability that he could not understand and voluntarily consent to a search, and even if he was lacking, Gasvoda had no notice of this. The explanation given by Gasvoda was simple enough that even a third grader could understand what was meant when Gasvoda read the form's statement that "You have the right to refuse to consent to a warrantless search of your property." (Gov. Ex. 1, Dec. 15, 2005 Hearing.) Also, the Defendant was aware and alert enough to refuse consent to Gasvoda's first request to search the apartment. He had the ability to refuse consent then, there is nothing to suggest he lost that ability three hours later.

More importantly, Gasvoda had no reason to believe the Defendant did not understand his rights, or could not give voluntary consent. His testimony was uncontradicted that the Defendant appeared to understand what was happening. Gasvoda learned the Defendant could not read and

5

write and had left school during the ninth grade, and so he explained to the Defendant his constitutional rights as he would to his eight-year-old child. The length of detention before the Defendant gave consent was about three hours, but during this time, the Defendant was left on the couch with his girlfriend to sleep and watch TV. (Dec. 15, 2005, Hearing Tr. 12, 28–29.) There is nothing to suggest this wait caused the Defendant's will to be overcome. Gasvoda did not badger the Defendant or repeatedly ask for consent to search. He asked to search the apartment, was told no, and asked again hours later around midnight. When Gasvoda asked for consent to search around midnight, the Defendant agreed. It was not until 12:17 a.m., when they were going through the third consent form that the Defendant became "wishy washy." However, having gone through the waiver form twice already, Gasvoda believed he understood, and the Defendant did not refuse to consent to the third waiver form. Finally, the Defendant was detained, but no physical force had been used on him. An analysis of all the relevant factors shows that a reasonable police officer asking for consent to search would have had no doubt as to the Defendant's ability to voluntarily consent to a search and to waive his right to insist on a warrant.

For the reasons stated, the Defendant's motion to suppress is DENIED. A telephone conference is SET for Thursday, April 20, 2006 at 11:30 AM to set a date for trial and a date for a final pretrial conference.

SO ORDERED on April 13, 2006.

    /s/ Thersea L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT